Filed 2/26/13  P. v. Robledo CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MANUEL ROBLEDO,<br><br>    Defendant and Appellant. | B243547<br><br>(Los Angeles County<br>Super. Ct. No. VA118863) |

      APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Modified with directions, as so modified, affirmed.

      Michael W. Flynn, under appointment by the Court of Appeal, for Defendant and Appellant.

      No appearance for Plaintiff and Respondent.

Defendant and appellant Manuel Robledo appeals from the judgment entered following revocation of probation previously granted following his plea of guilty to grand theft (Pen. Code, § 487, subd. (a)).[1]  The trial court sentenced Robledo to three years in county jail.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts – the probation violation.*

    a. *The prosecution's case.*

At approximately 12:10 a.m. on May 10, 2012, Los Angeles County Deputy Sheriff David Avila and his partner were on patrol in the area of Myrtle and Whittier Boulevards.  At the intersection of Edna and Myrtle, the deputy observed Robledo, accompanied by two passengers, driving a 2001 Chevrolet Tahoe at approximately 45 miles per hour in a 25-mile-per-hour zone.  In addition, the vehicle's headlights were not on and Robledo failed to stop at a stop sign.  Believing that Robledo was driving recklessly in violation of Vehicle Code section 23103, the deputy pulled up until his patrol car was approximately one or two car lengths behind Robledo, then turned on his overhead red lights to conduct a traffic stop.

Robledo pulled to the right side of the street and stopped.  As he did so, the passenger riding in the backseat of the car, Rudy Garcia, got out and ran west on Whittier Boulevard.  He was holding in his right hand a small, black, semi-automatic firearm.

Avila and his partner approached Robledo's vehicle with their guns drawn.  Once back-up units arrived "to help contain the area" and find Garcia, the deputies had Robledo and the front seat passenger, Jonathan Loaza, get out of the car.  Robledo had been cooperative.  When Avila had turned on his overhead lights, Robledo  pulled over immediately.  When the deputies then ordered him to place his hands where they could be seen, he had done so.  He made no "furtive movements."

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

Avila was familiar with Robledo and knew that he was a member of the Pico Viejo Gang.**2**  However, the area in which he had been driving was considered "a Jardin Gang area."  Avila knew that the two gangs were frequently "at war" with one another.

Approximately 30 minutes after the traffic stop, Garcia was located in the backyard of a nearby residence.  When deputies ordered him to come out, he did so and surrendered.  However, no gun was ever recovered.

Los Angeles County Sheriff's Detective Hank Ortega was also familiar with Robledo.  The detective had been "working" the Pico Rivera area since 2005 and, during that time, had had several contacts with Robledo, an admitted gang member whose moniker is " 'Sick One.' "  Ortega was also familiar with Rudy Garcia, who is also an admitted Pico Viejo Gang member whose moniker is " 'Rowdy.' "

Ortega knew the area surrounding the intersection of Edna and Myrtle and believed that the territory belonged, not to the Pico Viejo Gang, but to its rival, the Jardin Gang.  If the detective were told that "Pico Viejo gang members were driving in a vehicle with their lights out in the area of Edna and Myrtle [at 12:10 in the morning] and one of them had a handgun," it would cause the detective "some concern."  Because the Pico Viejo Gang members would have been in the "heart of a rival [gang's] territory," the detective would assume they were "out looking for trouble."

b. *Defense evidence*.

Robledo testified that, at approximately midnight on May 10, 2012, he was taking his cousin, Rudy Garcia, "to a girl's house in Montebello."  Robledo was driving his brother's car, a 2001 Chevrolet Tahoe.  The lights on the car are " 'automatic.' "  In other words, when it begins to get dark, the lights automatically go on.

---

**2**    Although Avila believed that Robledo and his two passengers were related in that they were all Pico Viejo Gang members, it was later determined that the three men were also cousins.

When he was driving down Myrtle Boulevard, Robledo was traveling at between 20 and 26 miles per hour. He is familiar with the street because he lives in Montebello and frequently uses it as a shortcut. When he was stopped by deputy sheriffs on May 10, 2012, Robledo and his two cousins were coming from Robledo's mother's home in Pico Rivera and he was approximately a mile from his home in Montebello. Robledo stated that neither he nor either one of his two cousins had been in possession of a gun that night. There had been no gun in his vehicle.

When he was pulled over by the deputy sheriffs, Robledo's cousin, Rudy, "bail[ed] out of the car" because he was on probation. Since Robledo is an admitted member of the Pico Viejo Gang and Rudy was a gang member, "it was a violation" of the terms of his probation for Rudy to be with Robledo.

Robledo admitted that, although he did not believe the two gangs were " 'at war,' " he knew he had been driving through a rival gang's territory on the night he was stopped.

2. *Procedural history; the trial court's ruling.*

After considering the evidence, the trial court stated: "Well, [based on] the fact pattern presented to me, Mr. Robledo is picking up his cousin at his mother's house in an area that is very different . . . [from the area] where the stop takes place. I articulated for the record I believe the sequence of the streets [and] there are several main thoroughfares . . . that would have been preferable to driv[ing] through . . . rival gang territory. [¶] And when you compound that by the fact the vehicle[']s lights [were] not on and an individual riding in the backseat, whether [it was] his cousin [or not], [was] a member of the same P.V. gang and [was] seen running out of the vehicle with [a] firearm, I'd say by [a] preponderance of the evidence Mr. Robledo [was] in violation of [the] terms and conditions of [his] probation, which [included that he] obey all laws, rules [and] orders of the court . . . . I am going to find him in violation of his . . . probation."

4

The trial court noted that Robledo had suffered prior convictions involving "firearms in vehicles." The court continued, "This is not a low-term case to me . . . . I'm disinclined to put him back on probation. There's been no great acts of violence surrounding Mr. Robledo, but as far as . . . I can see, it's only a matter of time." Based on his "criminal history" and his "poor performance" on probation and parole, the trial court sentenced Robledo to the "high term of three years" in county jail. (See § 1170, subd. (h).) The court then ordered Robledo to pay $240 to the victim restitution fund (§ 1202.4, subd. (b)), a $240 probation revocation fine (§ 1202.44), a $40 court operations assessment (§ 1465.8, subd. (a)(1)) and a $30 criminal conviction assessment (Gov. Code, § 70373).[3] The trial court awarded Robledo presentence custody credit for 180 days which he had served in Orange County, 22 days actually served in Los Angeles and 22 days of good time/work time, for a total of 224 days.

Robledo filed a timely notice of appeal from the judgment on August 22, 2012.

### CONTENTIONS

After examination of the record, counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed December 11, 2012, the clerk of this court advised Robledo to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. No response has been received to date.

### REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

---

[3]    The abstract of judgment indicates the trial court imposed a fine of only $200 pursuant to section 1202.44 and imposed a fine of $36 pursuant to section 1202.5.

5

## DISPOSITION

The trial court is directed to correct the abstract of judgment to reflect a section 1202.44 fine of $240 and to delete the $36 fine imposed pursuant to section 1202.5, then to send a corrected copy of the abstract of judgment to the Department of Corrections. In all other respects, the judgment is affirmed.

**NOT TO BE PUSLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

6